**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

UNITED STATES of AMERICA                                    PLAINTIFF/RESPONDENT

V.                    No. 14-50033 & 15-05232

ANDRES DIAZ                                                  DEFENDANT/PETITIONER

## REPORT and RECOMMENDATION

Before the court is the Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. Section 2255 (Doc. 56) filed September 25, 2015. The United States of America filed a Response (Doc. 72) on October 29, 2015. The Petitioner has not filed a Reply and the matter was referred to the undersigned on April 4, 2016 and is ready for Report and Recommendation.

### I. Background

On May 7, 2014, Diaz was named in five-count Indictment filed in the Western District of Arkansas. (Doc. 13). Count One charged Diaz with conspiracy to distribute methamphetamine, Count Two charged Diaz with aiding and abetting in distributing methamphetamine, Counts Three and Four charged Diaz with distributing methamphetamine, and Count Five charged Diaz with possessing with the intent to distribute more than 500 grams of methamphetamine.

On September 29, 2014, Diaz appeared with counsel, Kimberly R. Weber, before the Honorable Timothy L. Brooks for a change of plea hearing. (Doc. 32). A written plea agreement was presented to the Court that set forth that Diaz would agree to plead guilty to Count Four of the Indictment charging him with the distribution of methamphetamine, in

violation of Title 21 U.S.C. § 841(a)(l). (Doc.33, ¶ 1). Pursuant to the Plea Agreement the United States agreed to consider moving for a downward departure pursuant to § 5K1.1 if Diaz provided substantial cooperation. (Doc. 33, 21). The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR").

On December 17, 2014, the Probation Office issued Diaz's final PSR. The PSR assessed a base offense level of 36 pursuant to U.S.S.G. § 2D1.1(c)(2) based on Diaz being accountable for 2.5036 kilograms of actual methamphetamine. (PSR, ¶ 52). After receiving a 3 level decrease for acceptance of responsibility, Diaz's total offense level was determined to be 33. (PSR, ¶¶ 58–60). Diaz's criminal history amounted to a score of 5 placing him in category III. (PSR, ¶ 66). Diaz faced a maximum term of 20 years imprisonment on Count Four. (PSR, ¶ 92). Based upon a total offense level of 33 and a criminal history category of III, Diaz's guideline imprisonment range was 168 – 210 months. (PSR, ¶ 93).

On January 27, 2015, Diaz appeared with counsel, Kimberly Weber, for sentencing. (Doc. 48). At sentencing, the Court the Court determined a downward variance was warranted based on the age of Diaz's previous DWI convictions and conflicting Guidelines policies and varied downward from the criminal history to category II with a Guidelines range of 151 to 188 months. (Doc. 53). The Court sentenced Diaz to 180 months imprisonment, three years supervised release, with deportation anticipated, and $100 special assessment. (Doc. 52).

On September 25, 2015, Diaz filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 56) claiming that he received ineffective assistance of counsel.

## II. Discussion

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000); 2254. *Cox v. Wyrick,* 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

### Ground One: Ineffective Assistance of Counsel by attorney's failure to determine if the government had properly notified the Mexican Consulate (Doc. 56, p. 18).

Diaz first contends that counsel provided ineffective assistance by failing to determine if the United States had properly notified the Mexican Consulate upon his arrest, indictment, detention, or conviction. The Defendant, in his motion, expounds on the fact that the Vienna Convention on Consular Rights ("VCCR") are not always given in a timely manner (Doc., p.

20), what he believes the rights that are created under Article 36 of the VCCR (Id., p. 21), correctly stated that the several Circuits have held that Article 36 of the VCCR does not create an individual enforceable right (Id., p. 22), and attempted to define what "without delay" means in Article 36 (Id., p. 23).

The Vienna Convention on Consular Relations "is an international treaty that governs relations between individual nations and foreign consular officials." *Sanchez–Llamas v. Oregon*, 548 U.S. 331, 336 (2006) citing *Osagiede v. United States*, 543 F.3d 399, 402 (7th Cir.2008).

> Article 36 imposes three separate obligations on a detaining authority: (1) inform the consulate of a foreign national's arrest or detention without delay; (2) forward communications from a detained national to the consulate without delay, and (3) inform a detained foreign national of "his rights" under Article 36 without delay.

The purpose of the Vienna Convention is to ensure that a foreign government can provide assistance to its nationals who have been arrested. See Article 36 of the Vienna Convention on Consular Relations. *United States v. Raven,* 103 F. Supp. 2d 38, 41 (D. Mass. 2000).

Some courts have held that Article 36 of the Vienna Convention imposes no duty on defense counsel to notify a consulate as to the arrest of a foreign national. This duty is imposed solely on the government detaining the foreign national. Courts have not transferred a duty imposed on the United States to appointed counsel and held that failure to notify a foreign consulate did not fall below an objective standard of reasonableness. *See Sanchez-Contreras v. United States*, No. 08-CR-4079-DEO, 2011 WL 939005, at *4 (N.D. Iowa Mar. 16, 2011). See also, *Cornejo v. County of San Diego*, 504 F.3d 853, 863-64 (9th Cir.2007) (the VCCR does not give a foreign national detainee a "privately enforceable right to be notified" of his right to contact his consulate under the VCCR); *Bennett v. Gandara*, 528 F.3d 823 (11th Cir.2008)

(same); *United States v. Jimenez-Nava*, 243 F.3d 192, 198 (5th Cir.2001) (same); *United States v. Emuegbunam*, 268 F.3d 377, 391 (6th Cir.2001) (same).

The Eighth Circuit has, on at least two occasions, considered the issue of whether the Vienna Convention creates judicially enforceable individual rights. In both cases, which were direct appeals on suppression issues, the Eighth Circuit assumed without deciding that the Vienna Convention creates an individually enforceable right, but denied the defendants' requests for suppression of evidence. *See United States v. Ortiz*, 315 F.3d 873, 886–887 (8th Cir.2002) (assuming without deciding that the Vienna Convention creates judicially enforceable rights, but holding that suppression is not an appropriate remedy for violation of those rights); *United States v. Santos*, 235 F.3d 1105, 1107 (8th Cir.2000) (even if government's violation of Vienna Convention rendered confession involuntary, conviction would not be overturned; admission of confession was harmless error in light of overwhelming evidence against defendant).

Without an individually enforceable right to be notified of the right to contact one's consulate under the Vienna treaty, it appears that any action by movant's appointed trial counsel would have made no difference.

Even if movant does have a personal right to enforce the Vienna Convention, he has not shown prejudice resulting from his trial counsel's failure to advise him of his rights under the VCCA or to determine whether the government had notified the Mexican Consulate of his arrest, indictment and conviction. *See Turner v. Calderon*, 281 F. 3d 851 (9th Circuit, 2002).

The Defendant cites the Osagiede case out of the seventh circuit for the proposition that it is ineffective assistance for an attorney to fail to notify a foreign consulate. In the Osagiede case, however, the court pointed out that:

> The record does reveal that Osagiede had a special need for

services typically within the power of the consulate. Here, at the relevant conduct hearing, the Government presented nine tape recordings that allegedly contained Osagiede's voice. The tapes were difficult to decipher, however, because the speakers had strong Nigerian accents. In the end, only one of these recordings was properly analyzed. The Nigerian consulate might, perhaps, have provided the funds for a proper analysis of these tapes. The Nigerian Consulate might have been able to identify regional dialects, offer an accurate voice analysis or even translated the wiretaps itself. The Consulate could presumably have also located Lasisi, who was by then in Nigeria, and taken a statement from him. See, e.g., supra, n. 3 (describing the evidence gathered by the Mexican consulate in *Sanchez-Llamas* ). Lasisi was, after all, the man who had been previously mistaken for Osagiede and the man who may have been speaking on the tape recordings. The Nigerian Consulate appears to have been well situated and well equipped to provide Osagiede with this kind of assistance. Thus, Osagiede has gone a long way toward showing that he deserves an evidentiary hearing.

*Osagiede v. United States*, 543 F.3d 399, 413 (7th Cir. 2008).

The court finds that the unusual circumstances presented in the Osagiede case are not present in the Petitioner's case.

When making his argument about prejudice the Petitioner states in his brief:

There are several kinds of assistance the consulate might provide. People from other countries often have little knowledge of the U.S. legal system and the rights they may have when they are in the United States. In fact, timely consular access is crucial in criminal case to allow consuls to perform a number of services, including advising foreign national on the U.S. legal system, such as the right to remain silent, transmitting to courts and other competent authorities information and proposals that may help safeguard the rights of the foreign nation, bringing to the attention of the court relevant provisions of international agreements, and arranging for legal representation of nationals." (Doc. 56, p. 20).

At no time during his brief does the Defendant state how the failure to give timely

notification to his consulate specifically affected his case. In *Breard v. Greene*, 523 U.S. 371, 377, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998), the United States Supreme Court stated that it was "extremely doubtful that the violation [of the Vienna Convention] should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial."

Vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255. *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir.). *See also Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . " *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Voytik v.United States*, 778 F.2d 1306, 1308 (8th Cir.1985); see also *Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir.1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel).

Other courts have reached a similar conclusion. See, e.g., *Sandoval v. United States*, 574 F.3d 847, 850–51 (7th Cir.2009) (affirming denial of § 2255 relief where petitioner failed to show whether and how Mexican consulate would have assisted in his defense); *Baires*, 707 F.Supp.2d 656 (no prejudice resulting from belated consular notification); Duran–Martinez, 2007 WL 3342585 at *2 (finding no prejudice from counsel's failure to investigate violations of consular notification rights under Vienna Convention); see also *Breard v. Greene*, 523 U.S. 371, 377 (1998) (finding it "extremely doubtful that [a Vienna Convention] violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial").

Because Diaz has not show prejudice, his ineffective assistance claim concerning

consular notification fails.

The Defendant also seems to argue a Fifth Amendment claim in his brief. (Doc. 56, p. 28-29. However, a foreign national detained on suspicion of crime, like anyone else in our country, enjoys under our system the protections of the Due Process Clause. Among other things, he is entitled to an attorney, and is protected against compelled self-incrimination. *See Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896) ("[A]ll persons within the territory of the United States are entitled to the protection guaranteed by" the Fifth and Sixth Amendments). Article 36 adds little to these "legal options" . See *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350, 126 S. Ct. 2669, 2681-82, 165 L. Ed. 2d 557 (2006).

### Ground Two: Ineffective Assistance of Counsel by attorney's failure to ensure and inquire into government's promised filing of a §5K1.1(Doc. 56, p. 29).

For his second ground of relief, Diaz argues his counsel performed deficiently by failing to ensure and inquire into the United States' promise to file a § 5K1.1 motion prior to his sentencing.

Both U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) permit the government to make a substantial assistance-based motion for a downward departure. *See Wade v. United States*, 504 U.S. 181, 184-86, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (discussing the nature of the discretion granted to the government and the limitation placed upon the district courts by 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1). These provisions merely grant the prosecutor discretion; the government has no duty to make such a motion **unless it has entered into a plea agreement with the defendant that creates such a duty**. See id. at 185, 112 S.Ct. 1840 (observing that "in both § 3553(e) and § 5K1.1 the condition limiting the court's authority gives

the Government a power, not a duty, to file a motion when a defendant has substantially assisted"). *U.S. v. Wolf* 270 F.3d 1188, 1190 (C.A.8 (Iowa),2001)

A Plea Agreement was executed by the Defendant on September 29, 2014. (Doc. 33). According to Paragraph 21 of the Plea Agreement, Diaz acknowledged that the United States reserved its right to make the decision on the nature and extent of his cooperation in agreeing to consider moving for a downward departure under U.S.S.G. § 5K1.1. (Doc. 33, ¶ 21). Additionally, under Paragraph 26, Diaz agreed that the United States did not promise, by the terms of the agreement, to file a U.S.S.G. § 5K1.1 motion. (Doc. 33, ¶ 21). As a result of the Plea Agreement the Defendant entered a plea of guilty to Count Four of the Indictment (Delivery of methamphetamine on April 14, 2014).

In the Sentencing Memorandum filed by the Defendant's attorney on January 21, 2015 she states that:

> Most anticipated and significant to the guideline calculation will be a motion by the Government for Substantial Assistance resulting in a departure from the guidelines §5K1.1 and statute via 18 U.S.C. §3553. It has been suggested that Mr. Diaz will testify at Grand Jury and has already provided the government full and forthright information regarding other persons subject to indictment." Doc. 47, p. 4.

It is clear in the attorney's Sentencing Memorandum that the Petitioner's attorney had argued for the proposition that the government would file a §5K1.1 motion, however, the government did not agree to do so. The Court's Statement of Reasons form clearly indicates that there was no departure based on a 5K1.1 agreement. (Doc. 53, ¶ V, B,1).

In the context of litigating claims for postconviction relief, the Eighth Circuit has held defense counsel's failure to procure a plea bargain is not sufficient grounds for an ineffective assistance of counsel claim. *Beans v. Black*, 757 F.2d 933 (8th Cir. 1985). Likewise, an attorney

is not ineffective for failing to convince the government to pursue a strictly voluntary course of conduct absent a Plea Agreement to do so.

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be **DISMISSED with PREJUDICE**.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED April 28, 2016.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
U. S. MAGISTRATE JUDGE