# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF/RESPONDENT |
| V. CASE NO. 5:14-CR-50033 | |
| ANDRES DIAZ | DEFENDANT/PETITIONER |

## MEMORANDUM OPINION AND ORDER

Currently before the Court are the Report and Recommendation ("R & R") (Doc. 82) filed in this case on April 28, 2016, by the Honorable James R. Marschewski, United States Magistrate Judge for the Western District of Arkansas, regarding Andres Diaz's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 56); the Government's Response in Opposition (Doc. 72); Mr. Diaz's Reply to the Government's Response (Doc. 79);[1] and Mr. Diaz's Objections to the R & R (Doc. 84). In light of the Objections to the R & R, the Court has conducted a *de novo* review of the record in accordance with 28 U.S.C. § 636(b)(1)(C) and now finds that the Objections offer neither law nor fact requiring departure from the Magistrate Judge's findings. Accordingly, the R & R (Doc. 82) is **ADOPTED IN ITS ENTIRETY** and the § 2255 Motion to Vacate (Doc. 56) is **DENIED** for the reasons explained herein.

---

[1] In issuing the R & R, it appears the Magistrate Judge did not take into account Mr. Diaz's Reply to the Government's Response (Doc. 79). However, the Court has considered this filing in its *de novo* review of the record and finds the Reply presents no new questions of law or fact that would alter the Magistrate Judge's underlying findings and recommendations.

1

## I. BACKGROUND

On May 7, 2014, Mr. Diaz, a Mexican national, was charged in a five-count Indictment (Doc. 13) filed in the Western District of Arkansas for crimes involving methamphetamine distribution. On September 29, 2014, Mr. Diaz entered a Plea Agreement (Doc. 33) during a change of plea hearing in which he was represented by counsel. Pursuant to the Plea Agreement, Mr. Diaz agreed to plead guilty to Count Four of the Indictment charging him with distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and the United States agreed to consider moving for a downward departure pursuant to U.S.S.G. § 5K1.1 if Mr. Diaz provided substantial cooperation. (Doc. 33, ¶¶ 1, 21). The Government's counsel recited in open Court the facts surrounding Count Four of the Indictment that the Government contended it could prove if the case went to trial. Mr. Diaz stated his agreement that all of those facts were true and that the Government could prove those facts if the case went to trial. The Court then accepted Mr. Diaz's guilty plea and found that it was made knowingly and voluntarily, based on an independent basis of fact containing all the essential elements of the offense.

January 27, 2015, the Court sentenced Mr. Diaz on Count Four to 180 months imprisonment. The Government did not move for, and the Court did not award, a downward departure under U.S.S.G. § 5K1.1.

On September 25, 2015, Mr. Diaz filed the present § 2255 Motion to Vacate his conviction, asserting two separate claims of ineffective assistance of counsel. After the Motion was fully briefed, the Magistrate Judge recommended denying the Motion, and Mr. Diaz filed two objections to the R & R. First, Mr. Diaz objects to the Magistrate

2

Judge's finding that his counsel was not ineffective for: (1) failing to advise Mr. Diaz of his Vienna Convention Article 36 right to consular notification and/or (2) failing to determine whether the United States notified the Mexican Consulate about Mr. Diaz's arrest, indictment, or detention. Second, Mr. Diaz objects to the finding that his counsel was not ineffective for either promising Mr. Diaz that the United States would move to file a § 5K1.1 motion for substantial assistance, or for failing to compel the United States to file such a motion.

## II. LEGAL STANDARD

The Sixth Amendment provides criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 (1970). To prove ineffective assistance of counsel, a movant must show both that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255," since a strong presumption exists that counsel's conduct was reasonable. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (internal quotations omitted); *Strickland*, 466 U.S. at 689.

A showing of deficiency requires the movant to establish that his counsel was not the counsel "guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. The *Strickland* Court continued:

> In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the

3

circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 691.

A showing of prejudice requires the movant to show there is a reasonable probability that, but for his counsel's incompetent act or omission, the result of the proceedings would have been different. *Id.* at 694; *Alaniz v. United States*, 351 F.3d 365, 367 (8th Cir. 2003). The focus of this inquiry is on whether the "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A defendant's contention that his counsel's act or omission had some conceivable effect on the result of the proceedings is not enough to meet the burden of prejudice. *Id.* at 693; *Odem v. Hopkins*, 382 F.3d 846, 850 (8th Cir. 2004). Moreover, when a defendant's claim involves an act or omission during the plea process, the defendant must show that, but for his counsel's act or omission, there is a reasonable probability that he would have not pled guilty and would have insisted on going to trial instead. *Hill v. Lockhart*, 474 U.S. 52, 60 (1985); *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997). Lastly, to warrant an evidentiary hearing, the defendant must "provide some credible indication of facts reasonably available to him to support his claim." *Osagiede v. United States*, 543 F.3d 399, 413 (7th Cir. 2008).

### III. DISCUSSION

#### A. Objection One: Failure to Advise about Consular Rights or to Inquire about the Government's Compliance with Article 36 of the Vienna Convention

First, Mr. Diaz contends his counsel was ineffective for failing to either advise him of his Vienna Convention Article 36 right to consular notification or determine whether the United States had notified the Mexican Consulate about his arrest, indictment, or

4

detention. Article 36 of the Vienna Convention on Consular Relations states that authorities must "inform detained or arrested foreign nationals that they may have their consulates notified of their status." *United States v. Santos*, 235 F.3d 1105, 1107 (8th Cir. 2000); Vienna Convention on Consular Relations, Art. 36(b), April 24, 1963, 21 U.S.T. 77. Neither the Supreme Court nor the Eighth Circuit has held that Article 36 creates an individually enforceable right.[2] *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 343 (2006); *Santos*, 235 F.3d at 1108; *United States v. Ortiz*, 315 F.3d 873, 886 (8th Cir. 2002). Given this uncertainty, this Court is not convinced that defense counsel had a duty to inform her client of his right to contact the consulate or otherwise make sure that the Government or law enforcement did so, or that counsel's failure to verify that the consulate was so informed falls below prevailing professional norms, such as to violate her client's Sixth Amendment right to effective assistance of counsel. Again, "[a] defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255," and there is a strong presumption that counsel's conduct was

---

[2] The Circuit Courts are split on whether or not Article 36 creates individually enforceable rights. *See Osagiede*, 543 F.3d at 409-410; *Mora v. New York*, 524 F.3d 183, 187 (2d Cir. 2008). Furthermore, no District Court in the Eighth Circuit has recognized that Article 36 creates an individually enforceable right. *See United States v. Perez-Sanchez*, No. CR02-4065-MWB, 2006 WL 2949503, at *9 (N.D. Iowa October 17, 2006) (assuming without deciding that Article 36 creates an individually enforceable right); *United States v. Karbedeh*, No. 10–62 (DSD/JJK), 2010 WL 3521984, at *13 (D. Minn. August 11, 2010) (same). *See also Bolden v. United States*, 4:10-CV-2288 (CEJ), 2016 WL 1090618, at *3 (E.D. Mo. March 21, 2016) (finding that Article 36 does not create an individually enforceable right).

reasonable. *DeRoo*, 223 F3d at 925 (internal quotations omitted); *Strickland*, 466 U.S. at 689. Here, Defendant has not met this heavy burden.

Defendant cites *Osagiede v. United States* in support of his deficiency argument. However, Defendant's reliance on *Osagiede* is misplaced. In *Osagiede*, the Seventh Circuit noted that Osagiede's counsel was deficient in large part because the district court overseeing his case had previously ruled, and the Seventh Circuit had "always assumed," that Article 36 creates an individually enforceable right. 543 F.3d at 410-411 (noting that the Court "must reconstruct the situation faced by [defendant's] counsel as it would have appeared to a reasonably competent lawyer representing a foreign national [at that time and place]"). Therefore, the Seventh Circuit reasoned: "We believe that an Illinois lawyer, in particular, would have known to raise the Article 36 violation." *Id.* at 410. By contrast, no district court in the Eighth Circuit (including this one) has recognized that Article 36 creates an individually enforceable right.[3]

Even if the Court assumed that Mr. Diaz's counsel somehow performed deficiently with respect to consular notification, Mr. Diaz's claim of ineffective assistance would still fail due to a lack of resulting prejudice, which is the second requirement of the *Strickland* test. As the Magistrate Judge explained in the R & R, it is not enough that a defendant argue there was some "conceivable" effect on the result of the proceedings due to his counsel's conduct. *Strickland*, 466 U.S. at 693. Mr. Diaz merely speculates in his Motion to Vacate that something different might have occurred in the course of his criminal prosecution if his counsel had informed him of his Article 36 rights or verified with the Government whether consular notification had taken place. A

---

[3] *See* Footnote 2.

6

defendant is not prejudiced simply because he believes his consulate could have provided him a *better* attorney than the one he hired. As to this point, the Court finds persuasive the Southern District of New York's reasoning in *Alcantara v. United States*:

> The purpose behind the consular-notification provision of the Vienna Convention is to ensure that a foreign national charged with a violation of American law is visited by an official representative of his native country who can explain to him his rights as a criminal defendant in the United States, most notably his right to legal counsel. When a foreign national is able to obtain legal representation on his own, however, counsel then assumes full responsibility for safeguarding petitioner's legal rights, and there is no prejudice in failing to inform petitioner of his consular notification rights. A defense attorney cannot be labeled ineffective for failing to advise his client of the right to speak to a diplomatic official who could do no more to protect his rights than counsel himself.

2003 WL 102873, at *3 (S.D.N.Y. January 10, 2003) (internal quotations omitted).

For all of these reasons, Mr. Diaz has failed to show his counsel was ineffective with respect to consular notification, and his first objection is overruled.

### B. Objection Two: Failure to Ensure a § 5K1.1 Motion

Mr. Diaz next argues that his counsel was ineffective for failing to ensure that the Government made a § 5K1.1 motion for substantial assistance. Mr. Diaz maintains that his counsel "at all times . . . assured him that he would get a 'substantial reduction' in his sentence for his cooperation and she even told his family that Mr. Diaz 'had a scheduled court date for March 24, 2015 to receive his new sentence' and that he would probably get 120 months or less." (Doc. 56, p. 18). Mr. Diaz believes that "[at] a minimum, his attorney had a duty to inform this Court that the government had benefitted from Mr. Diaz's cooperation and permit the Court to ascertain if the government had failed in its obligations." (Doc. 79, p. 8).

7

First, the Court notes that Mr. Diaz's attorney *did* inform the Court at both the change of plea hearing and at sentencing that Mr. Diaz had been cooperating with the Government. Mr. Diaz's attorney also stated as much in her Sentencing Memorandum to the Court. *See* Doc. 47.

Second, as the Magistrate Judge stated in the R & R, the Government retains the discretion to decide whether or not a § 5K1.1 motion for downward departure is warranted based on a defendant's substantial assistance. The Government has no duty to make such a motion unless the plea agreement creates such a duty. *Wade v. United States*, 504 U.S. 181, 185 (1992) (finding that § 5K1.1 "gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted"); U.S.S.G. § 5K1.1. Here, the Plea Agreement created no duty to file a § 5K1.1 motion,[4] and Mr. Diaz's counsel could not compel the Government to file such a motion. *Cf. United States v. Rush*, 910 F. Supp. 2d 286, 295 (D.D.C. 2012) (finding that defendant could not "rely on the claim that her *counsel* was ineffective because the *Government* declined to move for a downward departure based upon Rush's alleged efforts to cooperate") (emphasis in original).

Further, at the change of plea hearing, the following colloquy between the Court and Mr. Diaz demonstrates that he fully understood that there was no guarantee a § 5K1.1 motion would be filed in his case:

> THE COURT: Mr. Diaz, is Paragraph 21 that Ms. Andrade interpreted for you, is that consistent with your understanding of the deal that you and

---

[4] *See* Doc. 33, ¶ 21 ("The defendant hereby agrees that the United States does not promise, by the terms of this agreement, to file a Section 5K1.1, 18 U.S.C. § 3553(e) or Rule 35 motion.").

8

your attorney have reached with the Government as it relates to a potential motion for downward departure under the sentencing guidelines?

MR. DIAZ: Yes. I believe so, yes.

THE COURT: And I want to be sure you understand two things about the language in Paragraph 21. Number one, the United States, although it is very likely and I would say probably customary for them to follow through with a motion for downward departure if they put language like this in your plea agreement, there's nothing that is technically obligating the Government to make such a motion. Do you understand that?

MR. DIAZ: Yes.

THE COURT: Secondly, do you understand that even if the Government makes such a motion, that there's nothing in the plea agreement that would obligate this Court to grant such a motion? Do you understand that?

MR. DIAZ: Yes. Yes, I understand that also.

A similar argument regarding ineffective assistance was made in the case of *United States v. Davis*, where a defendant also claimed his attorney was ineffective when she advised him that the Government would file a § 5K1.1 motion, but no such motion was ever filed. 583 F.3d 1081, 1092 (8th Cir. 2009). The Eighth Circuit assumed that the attorney's conduct was deficient but nonetheless held that the defendant failed to show prejudice because:

> [Defendant's] plea agreement accurately described the procedure and requirements for obtaining a reduction for acceptance of responsibility and a downward departure for substantial assistance. [Defendant's] attorney read the plea agreement to [Defendant], [Defendant] placed his initials next to each provision of the plea agreement, and the district court properly assessed [Defendant's] understanding of the plea agreement and application of the Guidelines.

*Id.* at 1092.

Here, as in *Davis*, Mr. Diaz has failed to show prejudice because his Plea Agreement accurately described the requirements for receiving a downward departure

9

for substantial assistance. *See* Doc. 33 ("If the defendant provides full, complete truthful, and substantial cooperation to the United States, the United States reserving the right to make the decision on the nature and extent of the defendant's cooperation, then the United States agrees to *consider* moving for a downward departure under U.S.S.G. § 5K1.1") (emphasis added).[5] By signing the Plea Agreement, Mr. Diaz acknowledged under oath that he read the agreement "and carefully reviewed every part of it with defense counsel." *Id.* at ¶¶ 19, 29. Furthermore, as previously mentioned, the Court questioned Mr. Diaz to verify that he understood that the Government had ultimate discretion in deciding whether his cooperation or assistance merited a § 5K1.1 departure, and that the Court had ultimate discretion in granting or denying the Government's motion. Under oath, Mr. Diaz acknowledged that he understood all of this. Moreover, at Mr. Diaz's change of plea hearing, the Court asked Mr. Diaz, "with the benefit of [your attorney's] explanation, do you understand all of the terms of this plea agreement," and Mr. Diaz responded, "Yes."

The Court also finds that Mr. Diaz suffered no prejudice because he never argued that, but for his counsel's assurances, he would have not pled guilty and would have insisted on going to trial, a showing that is essential to meet *Strickland*'s prejudice prong. *Hill*, 474 U.S. at 60 (finding that when a defendant's ineffective assistance of

---

[5] The Plea Agreement also contemplated the possibility that the Government might file a post-sentencing motion for substantial assistance pursuant to Rule 35(b). Even though it became clear sometime prior to sentencing that the Government would not, in fact, be moving for a downward departure under § 5K1.1, Mr. Diaz's counsel continued to zealously advocate for her client during the sentencing hearing and refused to abandon the argument that his cooperation could merit at least post-sentencing relief. She informed the Court that Mr. Diaz planned to testify before the Grand Jury in the coming weeks, and that she would follow up with the Government about possible Rule 35(b) relief in the future. Such statements tend to indicate counsel's effectiveness, rather than her ineffectiveness.

counsel claim involves the plea process, he must demonstrate that, but for his attorney's failure, he would have not pled guilty and gone to trial); *Prior*, 107 F.3d at 661.

For the foregoing reasons, Mr. Diaz's second objection for ineffective assistance of counsel is overruled.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation (Doc. 82) of the Magistrate Judge is **ADOPTED IN ITS ENTIRETY** and Andres Diaz's § 2255 Motion to Vacate (Doc. 56) is **DENIED**, and his case is **DISMISSED WITH PREJUDICE**. Judgment will be entered contemporaneously with this Order.

**IT IS SO ORDERED** on this 21st day of June, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE